IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Michael Lynn Brockschmidt, | Case No. 3:08 CV 1673 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Michael Brockschmidt filed a Complaint (Doc. No. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny Supplemental Social Security Income (SSI) and Disability Insurance Benefits (DIB). This Court has jurisdiction under 42 U.S.C. § 405(g). This case was referred to United States Magistrate Judge Vernelis Armstrong for a Report and Recommendation (R&R) pursuant to Local Rule 72.2(b)(2).

After briefing on the merits by both parties, the Magistrate recommended that the Court affirm the Commissioner's decision to deny Plaintiff's claims for SSI and DIB (Doc. No. 21). Plaintiff filed an Objection to the R&R (Doc. No. 22), to which Plaintiff replied (Doc. No. 23).

In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has reviewed the Magistrate's findings de novo. For the reasons below, the Court adopts the Magistrate's R&R denying Plaintiff's claim.

### BACKGROUND

This Court finds that the Magistrate's procedural and factual history (to which Plaintiff did not object) is accurate and complete. Accordingly, this Court adopts that portion of the R&R in its entirety.

As a brief background, Plaintiff was last employed as a painter of brake rotors for General Motors in April 2003. Prior to that, he had held other jobs, including a cook. Plaintiff suffers from a number of physical ailments, including hypercholesterolemia, hypertension, diabetes, high uric acid levels, gout in his big toe, chest pain, psoriasis, and a hernia. In addition, he has some mental impairments, including symptoms of depression and anxiety, and he reports having seizures, although they have not been medically confirmed. In April 2003, Plaintiff applied for SSI and DIB. After a hearing in October 2005, the ALJ concluded that Plaintiff had a limited residual functional capacity and was unable to perform his past relevant work. However, the ALJ found that there were still jobs that exist in significant numbers in the national economy that Plaintiff could perform, and therefore Plaintiff was "not disabled" for purposes of receiving Social Security benefits (Tr. 19-24).

### STANDARD OF REVIEW

In reviewing the denial of SSI and DIB, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by

2

substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (*citing* 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. § 423(a), (d). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (definition used in DIB context); *see also* 20 C.F.R. § 416.905(a) (definition used in SSI context). The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical for purposes of this case, and are found at 20 C.F.R. §§ 404.1520 and 416.920, respectively:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

3

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*; *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy. But the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step."). The Court considers claimant's residual functional capacity, age, education, and past work experience to determine if claimant could perform other work. *Walters*, 127 F.3d at 529. Only if a claimant satisfies each element of the analysis, including the inability to do other work, and meets the duration requirement, is he determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff raises four objections: (1) the ALJ failed to give sufficient weight to the medical opinion of Plaintiff's treating physician; (2) Plaintiff was denied due process because the ALJ relied on outdated evidence; (3) the ALJ improperly discounted the vocational expert's response to Plaintiff's hypothetical question; and (4) the ALJ's credibility determination was based on a flawed reading of the record.

**Opinion of Treating Physician**

Plaintiff contends the ALJ failed to give proper weight to the opinion of Dr. Anita Lewis-Sewell, his treating physician. Dr. Lewis-Sewell saw Plaintiff three times in 2001, providing follow-up care after Plaintiff had been treated in the emergency room for psoriasis and other ailments (Tr. 190-91, 193). She next treated Plaintiff on August 30, 2005 (Tr. 426). On December 15, 2005, Dr.

Lewis-Sewell filled out a disability questionnaire, in which she opined that Plaintiff would likely be absent from work more than four times per month, and that he would consequently "experience great difficulty maintaining full-time employment" (Tr. 437-38). Plaintiff argues the ALJ should have relied on Dr. Lewis-Sewell's opinion to find that Plaintiff was unable to work and therefore "disabled."

Generally, the medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 1996). "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Id.* (*citing* 20 C.F.R. § 416.927(d)(2)). A treating physician's opinion is given "controlling weight" if supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id.*

Even if the treating physician's opinion is not entitled to "controlling weight," there is nevertheless a rebuttable presumption that it deserves "great deference" from the ALJ. *Id.* In determining the proper weight to accord the treating physician's opinion, the ALJ should consider the length, extent, and nature of the treatment relationship, the frequency of examination, the supportability and consistency of the physician's conclusions, the specialization of the physician, and any other relevant factors. 20 C.F.R. § 404.1527(d)(2). Importantly, the ALJ must give "good reasons" for the weight it gives a treating physician's opinion. *Id.*

5

Dr. Lewis-Sewell's opinion was inconsistent with other credible evidence in the record and therefore was not entitled to "controlling weight." The ALJ then proceeded to determine how much weight to give her opinion, and declined to give it significant weight. This conclusion was reasonable in light of the overall record. The ALJ gave specific reasons for finding that her opinion was "not consistent with the medical evidence" (Tr. 22). The ALJ noted that Plaintiff had previously worked while having psoriasis, asthma, and diabetes -- conditions that Dr. Lewis-Sewell believed would prevent him from maintaining a full-time job (Tr. 22). Furthermore, Dr. Lewis-Sewell's opinion was "not supported by more specialized physicians who have not observed either that the claimant would necessarily be more prone to infection/exacerbation, or that individuals with psoriasis are inherently unable to work" (Tr. 22). There is nothing in the record to indicate that Plaintiff's conditions have worsened over time, so the ALJ was justified in viewing Dr. Lewis-Sewell's recent opinion as conflicting with other parts of the record.

In upholding the ALJ's rejection of Dr. Lewis-Sewell's opinion, the Magistrate noted that Dr. Lewis-Sewell's isolated, infrequent treatment of Plaintiff "did not provide the detailed, longitudinal picture of Plaintiff's medical impairment(s) that is contemplated under the treating physician rule" (Doc. No. 21, p. 14). Plaintiff objects to this conclusion, arguing that there is no requirement for a minimum number of visits or treatment frequency to invoke the treating physician rule. Plaintiff relies on *Meece v. Barnhart*, 192 F. App'x 456, 463 (6th Cir. 2006) for the rule that a doctor need not examine a claimant a set number of times in order to qualify as a treating physician. However, Plaintiff overstates the holding in *Meece*. The court in *Meece* was chiefly concerned with comparing two conflicting opinions to the overall record, and at most suggests the number of visits is not *dispositive* in assigning weight to a particular medical opinion. *Id. Meece* does not deny that the

6

number of visits is a relevant factor. Thus, this Court finds the Magistrate's point is well-taken and provides further justification for the ALJ discounting Dr. Lewis-Sewell's opinion.

Plaintiff also contends that Dr. Lewis-Sewell's conclusions were based on more than her limited personal contact with Plaintiff; they were also based on medical reports from other doctors at her clinic, where Plaintiff had been a patient since at least 2003. This argument is not directly supported by the record, but to the extent it can be inferred, it has no relevance to the application of the treating physician rule, which is premised on a treating physician's ability to "bring a unique perspective . . . that cannot be obtained from the objective medical findings alone." 20 C.FR. § 404.1527(d)(2). Dr. Lewis-Sewell cannot be considered a "treating" physician for purposes of interpreting older records that she did not originally make, so her conclusion based on those records is not entitled to any special deference. In sum, this Court finds that the ALJ's decision to give little weight to the opinion of Plaintiff's treating physician is well-supported by the record.

**Due Process**

Plaintiff claims the Commissioner's delay in providing an ALJ hearing violated his due process rights. Plaintiff does not contest the Magistrate's conclusion that there is no specific deadline for holding a hearing. Rather, he objects to the ALJ's reliance on "stale" medical evidence. He argues that by the time the ALJ held a hearing and issued a decision -- more than two years after Plaintiff initially applied for benefits -- the medical testimony was outdated and unreliable. Plaintiff requests that this Court instruct the ALJ to update the medical evidence and hold a new hearing.

Plaintiff has cited no authority that would compel this Court to enter such an order. The ALJ does have a duty to develop an adequate record to support a decision. *See Born v. Sec'y of Health & Human Serv's*, 923 F.2d 1168, 1172 (6th Cir. 1990). But the burden of providing a complete record

7

detailed enough to enable the Commissioner to make a disability determination rests with the claimant. *Landsaw v. Sec'y of Health & Human Serv's*, 803 F.2d 211, 214 (6th Cir. 1986). The record in this case comprises nearly 500 pages and contains substantial medical evidence that certainly forms an adequate basis for the ALJ's decision. The ALJ was thus under no duty to further develop the record.

Moreover, the ALJ allowed Plaintiff to supplement the record after the hearing, which the Plaintiff did, notably with the opinion of Dr. Lewis-Sewell (Tr. 435-38). The record therefore includes the sort of recent medical evidence that Plaintiff argues is lacking. The ALJ's eventual discount of Dr. Lewis-Sewell's opinion is irrelevant to the due process issue, because Plaintiff had a fair opportunity to present current medical evidence to the ALJ before, during, and after the hearing. Plaintiff has not explained how additional supplementation of the record at this stage would change the outcome. This Court therefore adopts the Magistrate's conclusion that there was no due process violation.

**Vocational Expert Testimony**

Plaintiff argues that at Step Five of the disability determination, the ALJ improperly disregarded the Vocational Expert's (VE) testimony that it would be difficult for Plaintiff to hold a job if he had to miss more than one day per month. The VE initially testified, in response to the ALJ's questioning, that Plaintiff would be able to perform several jobs involving light, unskilled work, including mail clerk, microfilm processor, and photocopy machine operator (Tr. 488). This testimony was based on the ALJ's assessment of Plaintiff's residual functional capacity. Plaintiff's counsel then asked the VE if an individual would be able to hold these jobs if he missed work "two to three days . . . at a time on a frequent basis" (Tr. 489). The VE replied that such absences from entry-level

8

jobs "would result in disciplinary action and ultimately discharge" (Tr. 489). Based on the VE's testimony, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform" and that Plaintiff was therefore "not disabled" for disability insurance purposes (Tr. 24). *See* 20 C.F.R. § 404.1520(a)(4)(v) (claimants will be found "not disabled" if the Commissioner determines they can make an adjustment to other work).

Plaintiff contends the ALJ's conclusion was erroneous in light of the VE's response to his counsel's hypothetical question. However, that testimony is only relevant if the ALJ credited Dr. Lewis-Sewell's opinion that Plaintiff's psoriasis and other conditions would cause him to miss work frequently, which was the premise of counsel's question. As explained above, the ALJ, when considering Plaintiff's residual functional capacity, found the doctor's opinion unpersuasive and unsupported by the record. The rest of the record contains substantial evidence supporting the ALJ's conclusion that Plaintiff could perform light unskilled labor of the sort identified by the VE. Therefore, the ALJ did not err in finding counsel's hypothetical question to be unsupported by substantial record evidence.

**Credibility of Plaintiff**

Finally, Plaintiff argues that the Magistrate's conclusion that Plaintiff's testimony was unreliable is based on a flawed reading of the record. Credibility determinations of the ALJ should "not be lightly discarded" by this Court. *Villareal v. Sec'y of Health and Human Servs.*, 818 F.2d 462, 463 (6th Cir. 1987). "It is for the Secretary and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001). However, the ALJ's credibility finding must be supported by substantial evidence. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984).

Here, Plaintiff specifically contends that "the ALJ's credibility determination was influenced primarily by his belief that [Plaintiff] was continuing to abuse alcohol," which, according to Plaintiff, is unsupported by the record (Doc. No. 22, p. 11). Plaintiff misreads the ALJ's opinion. When assessing the credibility of Plaintiff's testimony, the ALJ noted, "[Plaintiff] does not have impairments that reasonably explain all the symptoms that he alleges," nor are his conditions as "chronic and severe as he urges" (Tr. 18). This conclusion was supported by substantial evidence; for example, Dr. Michael Grillis, who treated Plaintiff for an umbilical hernia in 2003, concluded that "there is **no** reason I am aware of that this patient can't work. He rides a bicycle for his mode of transportation" (Tr. 318) (emphasis in original). In light of such medical opinions, it was reasonable for the ALJ to conclude that Plaintiff's claims of completely disabling injury were unreliable.

Furthermore, to the extent the ALJ based his credibility finding on conflicting reports of Plaintiff's alcohol abuse, his conclusion is supported by the record. Plaintiff told a doctor in 2005 that he had not consumed alcohol in two to three years, yet he admitted to the ALJ that he had a relapse in 2005. In addition, the ALJ determined that Plaintiff was "reluctant" to speak about the role his alcoholism played in the loss of his last job. This Court will not second guess the credibility determination of the ALJ when there is a reasonable basis in the record for the ALJ's conclusion.

## CONCLUSION

For the foregoing reasons, the Court adopts the Magistrate's recommendation that this Court affirm the Commissioner's denial of Plaintiff's DIB and SSI benefits.

IT IS SO ORDERED.

                 s/ *Jack Zouhary*
                JACK ZOUHARY
                U. S. DISTRICT JUDGE

                September 30, 2009